In The United States District Court
For the Western District of Virginia
Roanoke Division

pg 1 of 22

GARY HANCOCK
        Plaintiff

        V.                          Case # 7:20-CV-00225

NANCY SMITH;
BENJAMIN PARKER; DEBBIE SAYLOR;
CHARLES BRAY; TIMOTHY YORK;
VIBEKE DANKWA; MARIA MARRERO;

Amended/Supplemental Complaint
With Jury Demand

Comes now the plaintiff, Pro Se, Filing This Amended/Supplemental Complaint pursuant to Bivens, 403 U.S. 388 (1971), alleging denial of Medical Care and Unconstitutional delay in Medical treatment in violation of the 8th Amendment to the U.S. Constitution. All incidents in This Complaint took place at the Federal United States Penitentiary in Lee County Virginia

Jurisdiction

1. The Court has Jurisdiction over the plaintiff's Claims of violation of Federal Constitutional Rights Under 28 U.S.C. 1331 (a).

## Parties

2. Nancy Smith is a health care provider at U.S.P. Lee. She is sued in her individual capacity.

3. Benjamin Parker is a nurse at U.S.P. Lee. He is sued in his individual capacity.

4. Debbie Saylor is the health Services Administrator at U.S.P. Lee. She is Sued in her Individual Capacity.

5. Charles Bray is a nurse at U.S.P. Lee. He is sued in his individual Capacity.

6. Timothy York is the Clinical Director (doctor) at U.S.P. Lee. He is sued in his individual Capacity.

7. Vibeke Dankwa, at the time of these events, was the doctor employed by the F.B.O.P. Mid-Atlantic Regional Office in Annapolis-Junction, Maryland. Ms. Dankwa replaces "John Doe" in the original Complaint. She is sued in her individual capacity.

8. Maria Marrero was/is the overseeing

physician/doctor employed by the F.B.O.P.
Mid-Atlantic Regional Office. She is Sued
in her Individual Capacity.

## Exhaustion Of Administrative Remedies

9. I have been denied access to the administrative
remedy process. My entire stay at U.S.P. Lee,
within my First Few months of arriving at USP.
Lee, I Filed two BP-8 Grievance Forms which
were clearly not logged by my Counselor Mr.
Willis. I remember one BP-8 distinctly being
For Food Service serving us Peanut Butter
and other items Containing hydrogenated
Vegetable oil (Trans Fat) which has been
banned by the F.D.A. (B.O.P. Facilities Continue
to Serve Trans Fat Peanut butter). When I turned
in this Second BP-8, Mr. Willis told me, "don't
bring me any more of these god damned things,"
referring to my BP-8. His tone and Fury implied
"or else". I later learned and witnessed U.S.P.
Lee Staff (especially Officer Delf) planting
Knives in prisoners' cells who use the grievance
procedure. I was given a direct order by
Mr. Willis not to File anymore BP-8's, and I
Followed Staff's order, as I must. And
this is the only reasonable explanation for
my not Filing anymore Complaints while on

4 of 22

the Compound (General Population) at U.S.P. Lee. The Administrative Remedy process was not available to Me.

10. While in the SHU at Lee County, My assigned Counselor became Ms. Collins. I was no longer worried about Mr. Willis' direct order or retaliation by staff. I asked Ms. Collins on two separate occasions for BP-8 Complaint forms While in SHU. She never returned with the forms. These forms are supposed to be readily available. Because Staff refused to give Me the proper forms, the Administrative Remedy became unavailable.

11. The P.L.R.A., 42 U.S.C. § 1997e (a) 1996, requires that an inmate exhaust "available" administrative remedies prior to filing civil actions. However "a prisoner need not exhaust remedies if they are not available". Ross v. Blake ___ U.S. ___, 136 S.Ct 1850, 1856-57, 195 L.Ed. 2d 117 (2016).

12. I was amazed by the level of staff corruption an non-adherance to policy at U.S.P. Lee. This corruption is seen in my inability to provide the Court with the Prisoner Trust Account report and accompanying account statement until I reached My next institution.

It got so bad (the mail tampering) that I had to send my legal mail to another inmate so he could mail it for me with his name on the return address (There may be a copy of the envelope, with another inmates name, on this docket and/or the docket for my appeal in the 4th Circuit Court of Appeals, Hancock v. Rickard). With this level of corruption, it isn't far fetched to conclude that staff would deny inmates grievance forms.

13. I also mentioned U.S.P. Lee staff denying me grievance forms starting on page 17 of my complaint in Gary Hancock v. Lieutenant Lafave, et al, Case No 7:20-cv-00687, in this court; ~~fited during~~ describing the same time-frame in U.S.P. Lee S.H.U.

## Facts

14. I arrived at U.S.P. Lee on 4/24/2018.

15. Since arriving at USP Lee I have had major health problems that I have been denied medical care (constitutionally adequate) for.

## Digestive Disorder

16. I believe July 5, 2018 was my first time

reporting to sick call at USP Lee Complaining of Severe Constipation and extreme abdominal and back pain.

17. My Medical records show numerous visits to sick-call Complaining of pain. After reviewing My Medical records, I see that defendant Smith has Falsified Many entries in My records, stating My pain was less than I Communicated it was.

18. At a Ms. Smith said that I must purchase Over the Counter (OTC) Stool Softeners, and pain pills before she could provide Further treatment.

19. I Complied with all instructions to self-treat with OTC's (excessively So). See "Attachment 1" (which are reciepts for all My Commissary purchases For OTC Meds From 5/24/18 to 4/26/2021). On 7/5/18, I went to Commissary and purchased two bottles of Stool Softener trying to relieve My excruciating pain; 7/5/18, the same day I was seen For sick call.

20. "Attachment 1" actually reveals the level of physical torture I was exposed to; Attachment 1 Shows that I actually abused OTC Meds, to no avail, trying to relieve My suffering. I've

Spent exactly $355.70 on OTC Medications from 5/24/18 - 4/26/21. Medical staff still has the audacity to imply that I haven't followed their instructions to purchase these items.

21. In my medical Records, on, ~~8/18/20~~ 8/24/18 I told defendant Parker that Stool Softeners were not helping Constipation and pain. On subsequent Sick-Call visits I told Smith, Bray, and ~~York~~ York that OTC's were not helping much at all, yet they all continued to order me to use OTC's as if I haven't purchased any.

22. All of these OTC's advise user to stop use and consult a _doctor_ if symptoms persist for over a week or two.

23. On one Sick-Call visit, defendant Smith laughed at the plaintiff when I complained of my extreme pain, scarcastically telling me to "buy plenty of ibuprophen." I told her that Motrin upsets my stomach. I told her that the OTC pain meds didn't help the pain at all.

24. Smith, at one point, ordered an abdominal X-Ray which was unable to diagnose source of my pain. Plaintiff asked Smith to send him to a gastro-

8 of 22

intestinal doctor/specialist on multiple occassions and she refused, simply ordering me to use OTC treatments that were not working and saying "eat more vegetables" as if I can go to the grocery store and buy fresh produce.

25. There have been several sick-call visits that were not documented in my medical records (I'm estimating 4 or 5). And there have been times that I went to sick call for abdominal pain and have been turned away by Smith (or Ms. Herrel, another Nurse) in the hallway because they made it known that they were tired of seeing me for the same complaint. (3 or 4 times).

26. At trial, medical records will show that the defendants knowingly kept me on a highly ineffective regimen of OTC treatment and denied me access to a specialist who would better understand my chronic symptoms and pain.

27. I went to SHU on 10/19/2019. While in SHU I gave sick-call requests to Parker a couple times a month but was never assesed by medical staff, except for an unrelated, routine Chronic Care visit for seizures. My sick-call requests went unanswered in SHU

28. Defendant Saylor Makes rounds in the SHU a couple times a month. On 3 seperate occasions plaintiff has given Ms. Saylor written requests saying that he was in extreme pain and being denied access to a doctor to diagnose his condition. Her inaction provided authorization to subordinate staff to continue denying me access to a doctor.

29. On January 14, 2020, Defendant Dankwa visited U.S.P. Lee SHU. She ordered that an offsite abdominal ultrasound be performed. USP Lee staff did not schedule the ultrasound and defendant Parker told me that the Regional Office (the same office that ordered the ultrasound) dissaproved the ultrasound.

30. On 3/19/2020 at approximately 12:30 pm, plaintiff had a medical emergency in SHU cell. My abdominal/back pain had gotten so bad that I was having trouble walking and moving around the cell. I pressed the duress button in my cell and Shu staff responded. I explained that I was having sharp abdominal pains that got worse when I put weight on my right leg. SHU staff forcefully removed me from my cell, forcing me to walk backward and bent at the waist, unnecessarily causing me more pain.

Medical Staff, Defendant Bray, came to SHU due to Medical emergency. A superficial physical examination was performed.

Defendant Bray partially falsified the entry in Medical records (see Document 53-1, pages 87-91) Stating "the pain is non-radiating" I told him it radiates to my back; Stating "inmate has tried nothing for relief of symptoms", which is false. I told Bray that I had been abusing OTC laxitives for two years just to try to get some relief but they don't help. The pain keeps getting worse. "Attachment 1" proves this, there is no way I would tell Bray I havent tried anything for pain. I wanted him to know the truth so I could get next-level care.

31. At the encounter on 3/19/20 Bray noted that he told me "Increase fluids, laxatives, stool softeners, fiber tablets", After I told him that these don't work!

32. Defendant Marrero "Cosigned" the Medical report by Mr. Bray (see ECF# 53-1, page 91 of 414). Like many other sick-call visits, Dr. Marrero Cosigned Smiths Medical reports after I kept coming to medical with same

pain; ~~it~~ long after it was documented that OTC's didn't work for pain. Marreros Cosigning for continued treatment with OTC's that dont work makes her deliberately Indifferent to my Medical needs.

33. Overseeing physicians that cosign Medical reports put no thought into the patient's Medical care. It is all a show, to make it look good For the paperwork. These physicians only care about their paycheck.

34. While housed in SHU, Bray replaced Smith as my primary healthcare provider. Bray continued ordering me to continue the documented ineffective OTC treatment.

35. On 4/28/2020, several days after this Civil action was docketed, I FINALLY saw a doctor. Go Figure. I was pulled from my cell In SHU and taken to the SHU Medical exam room. I was seen by Defendant York. Dr. York's primary concern seemed to be his Frustration about me writing the F.B.O.B. Central office directly about being denied Medical care. He verbally chastised me about my complaint to the Central office and not using the "correct forms" (see

Document 53-1, page 52 of 414). This also shows that the correct forms, administrative remedy forms, were not available to me - or I would have used them to get my complaint to the proper level, at the same time exhausting my remedies.

Finally. After years of being denied access to a doctor, I see a doctor who orders the proper lab tests. Dr. York ordered several labs including "Lab tests - C - Celiac Disease Panel/ Cascade" (see ECF#53-1 pages 60-61) The Celiac Disease labs came back "Positive Abnormal" for celiac disease or "other gluten-Sensitive enteropathies" (see ECF#53-1 page 177 of 414).

36. Even after these abnormal lab results, Nothing was done to treat my condition or educate me about it. I was never informed of the abnormal test result, and Dr York or Bray took no further steps, ordered no Further labs (as indicated by lab results). This shows deliberate indifference.

37. Medical staff went as far as hiding the abnormal results from me. While still at Lee County, I requested copies of all the labs ordered

by Dr. York ~~on 4/1~~ after the 4/28/20 visit. Medical staff gave me copies of blood lab results but did not include the abnormal results. This shows deliberate indifference.

38. I did not know that I had abnormal lab results until I recieved my first copy of Defendants' Memorandum of law in support of their Motion to Dismiss (Document 53) approximately 2 weeks ago. This was a corrupt "Cover-up" at it's Finest.

39. These abnormal test results show, without dout that I needed to see a specialist; that I was presenting with classic symptoms of Celiac disease/Gluten-sensitivity; that My ~~e~~ Two years plus of suffering excruciating pain was not me faking but sincerely seeking help from medical staff; that Ordering me to abuse OTC laxitives against all sound Medical judgement, and lay-person Knowlege, for that matter, was WRONG and constituted deliberate

indifference to my serious medical needs

## Seizure Disorder

40. On 6/17/19 I went to sick call Complaining of Seizures and "Night-Jerks" (violent convulsions while asleep) to Ms. Smith. Ms. Smith refused to restart my seizure meds because I voluntarily refused to take them in the past.

41. I practically begged Defendant Smith to restart my seizure medication for 6 months. She told me one time that my "little twitches are not seizures," & I believe that she alluded to her disbelief in my seizure disorder in my medical records.

42. For the nearly 6 months that Smith made me go without seizure meds, I had to endure violent convulsions and twitches while sleep and awake, and altered states of consciousness.

## Other Facts

43.   On 2/28/2019 I had a ~~Tele~~ Video-Confrence personally with defendant Marrero. I told her personally that the OTC Meds and Fiber were not helping My condition or the pain. She simply told me to "take More" Fiber. I put her on notice that current OTC treatment wasn't working, and hadn't been for Months, and she saw fit to simply say "take More."

44.   The defendants point the Finger at defendant Dankwa ~~s~~ as being the one who dissapproved the abdominal ultrasound.

## Claims For Relief

45. Defendants Smith, Parker, Bray, York, Saylor, and Marrero all took part, in varying degress, in prolonging My pain and suffering — physical, Mental,

and emotional. They all worked together to continue ordering me to treat my condition with OTC medication practically years after I told them that the OTC's were not helping. This was not merely medical malpractice or negligence. This was deliberate ~~ind~~ indifference to my serious medical needs in violation of the 8th Amendment. See De'lonta v. Johnson, 708 F.3d 520, 526. (4th Cir 2013) "But just because appelles have provided De'lonta with some treatment consistent with the GID standards of care, it does not follow that they have necessarily provided her with Constitutionally adequate treatment. See De'lonta, 330 F.3d at 635-36; Langford v. Norris, 614 F.3d 445, 460 (8th Cir 2010) ("A total deprivation of care is not a necessary condition for finding a Constitutional violation: Grossly incompetent or inadequate care can [also] constitute deliberate indifference...")

"By analogy, imagine that prison officials prescribe a painkiller to an inmate who has suffered a serious injury from a fall, but that inmate's symptoms, despite the medication,

persist to the point that he now, by all objective measures, requires evaluation for surgery. Would prison officials then be free to deny him consideration for surgery, immunized from constitutional suit by the fact they were giving him a painkiller? We think not. Accordingly, although Appellees and the district court are correct that a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need."

The Fourth Circuit's reasoning in De'lonta is EXACTLY in line with the facts of the instant civil action. The defendants knew (because I personally told ALL of them) that the OTC's were not helping. They are all liable under the 8th amendment for continuing the constitutionally inadequate course of treatment, AND for refusing me prescription painkillers which I requested to Smith, Parker, York, and Bray.

The defendants knew I had a serious

Medical need because I told Smith my pain was an 8 out of 10. I told Bray my pain was a 10 but he documented it as a 9., Despite this knowledge, they refused to refer me to a specialist.

46. Defendants Smith, Parker, Saylor, Bray, York, and Marrero showed deliberate indifference to my serious medical needs in violation of the 8th Amend. by not referring me to a Gastro-intestinal specialist after my many requests for the same. See e.g. Hayes v. Snyder, 546 F.3d 516, 526 (7th cir 2008) (refusal to refer to a specialist where doctor did not know cause of reported extreme pain made no sense and could support deliberate indifference finding)

47. Notwithstanding the fact that I, in the past, voluntarily signed refusals for seizure medication, my renewed request for treatment rendered the prior refusals moot. I told Smith that my Epilepsy had took a turn for the worst and I must take my medication. She

ignored my requests for nearly 6 Months, telling me my twitches were not seizures (when records clearly show a history of seizures and medication). It was her duty to immediately perform whatever tests were needed to convince her I needed meds. The 6 months it took to re-start my seizure medication constituted an unconstitutional delay in treatment, and deliberate indifference to my serious medical needs in violation of the 8th Amend. See e.g. McElligott v. Foley, 182 F.3d 1248, 1256-57 (11 cir 1999)(holding repeated delays in doctor's seeing a patient with constant severe pain could constitute deliberate indifference); Lavender v. Lampert, 242 F.supp. 2d 821, 848 (D.or. 2002) (failure to provide continuous and effective pain relieving medication for prisoner known to have severe chronic pain.)

48. While in Shu, Parker continued to ignore my sick-call request-slips about my chronic abdominal pain, even telling me to stop submitting sick-calls about the same issue. This constituted deliberate indifference to my serious medical needs in violation of the 8th Amendment.

20 OF 22

49. Insofar as defendant Dankwa played a role in refusing the plaintiff's abdominal ultrasound, which May have diagnosed damage to the small intestine from celiac disease. This denying of the ultrasound showed deliberate indifference to the serious medical needs of the plaintiff in violation of the 8th Amendment.

50. Defendants York, and Bray, by refusing to notify plaintiff of the abnormal lab results indicating Celiac disease/gluten sensitivity, and refusing to prescribe the necesarry gluten-free Medical diet, and educate me about My source of pain being from ingesting Wheat/gluten products; also refusing to order further labs — ignoring My diagnosis altogether— ~~Constituted~~ and embark on standard treatment for My condition, Constituted deliberate indifference to My serious Medical needs in violation of the 8th Amendment.

51. There are several Civil cases in the 4th Circuit that describe Celiac Disease and

21 of 22

the pain it causes. I have read a few. This disease causes "DAMAGE" to the small intestine upon the ingestion of Gluten. The physical injury caused by the deliberate indifference of the defendants violated the 8th Amendment.

## Relief Requested

### A. Declatory Relief

1. Plaintiff asks the Court to issue a declatory Judgement declaring that the actions and ommissions of all defendants constituted deliberate indifference to the serious medical needs of the plaintiff, in violation of the 8th Amendment.

### B. Damages

2. Issue Compensatory, Punitive, and Nominal (if applicable) damages Jointly and severally against all defendants for the physical injuries, Mental and emotional injuries/ psychological injuries, and Constitutional injuries caused by the unconstitutional

22 of 22

actions of the defendants in the total amount of:

$ 2,500,000

(or amount Court and Jury deems appropriate, More or less)

I, Gary Hancock, declare under penalty of Perjury that the Forgoing is true and Correct.

5/4/2021

Gary Hancock 56765-037
U.S.P. P.O. Box 1002
Thomson, IL 61285