## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **GARY HANCOCK,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:20CV00225 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **NANCY SMITH, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Gary Hancock, Pro Se Plaintiff; Krista Consiglio Frith, Assistant United States Attorney, Roanoke, Virginia, for Defendants.*

Gary Hancock, a federal inmate proceeding pro se, filed this civil rights action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Hancock alleges that the defendants failed to provide him appropriate medical care for chronic constipation and seizure disorder, in violation of his Eighth Amendment rights. After review of the record, I conclude that the defendants are entitled to summary judgment based on Hancock's failure to exhaust administrative remedies as required under 42 U.S.C. § 1997e(a).

### I.     BACKGROUND.

At all times relevant to Hancock's claims, he was incarcerated at the United States Penitentiary Lee County ("USP Lee") in Jonesville, Virginia. When Hancock arrived at USP Lee on April 24, 2018, officials assigned him to the general

population.  Hancock alleges that he complained numerous times to medical staff that he was suffering from chronic constipation and severe abdominal pain.  Among other things, the medical staff advised him to buy over-the-counter ("OTC") stool softeners and pain pills.  Hancock insists that he did buy such products and used them, without experiencing significant relief from his symptoms.  In February 2019, during a video exam, Hancock told the doctor that OTC products had not helped, but the doctor advised him to "take more" fiber.  Am. Compl. 15, ECF No. 69.  A provider ordered an abdominal X ray that did not diagnose the source of Hancock's pain, but the provider did not grant Hancock's request to see a specialist.

In October 2019, officials transferred Hancock to the Special Housing Unit ("SHU"), where he had limited opportunities to leave his cell.  He allegedly continued to file requests for treatment of his abdominal pain, and the medical staff continued to deny him access to a doctor.  Hancock alleges that in January 2020, a doctor from the regional office met with him and ordered an abdominal ultrasound.  According to Hancock, USP Lee never scheduled such a test for him, and the regional office later disapproved the procedure.

Hancock alleges that on March 19, 2020, he suffered a medical emergency, when his abdominal pain became so severe that he could not walk.  When medical staff evaluated him, their medical notes allegedly minimized his reports of pain and his stated prior attempts to address the problem with over-the-counter products for

constipation.  Hancock saw a different doctor on April 28, 2020, who ordered lab tests.  Hancock alleges that the test results showed a sensitivity to gluten, or celiac disease.  He complains that none of the defendants notified him of these results, which he learned about only through exhibits provided during this litigation.

Hancock also contends that in June 2019, he went to sick call complaining that he had been experiencing "seizures and 'Night-Jerks' (violent convulsions while asleep)." *Id.* at 14.  He told his provider that his epilepsy symptoms had worsened, and he wanted to restart his medication.  The provider "refused to restart [Hancock's] seizure meds because [he had] voluntarily refused to take them in the past." *Id.* Hancock alleges that he suffered the convulsions and seizures for six months while his provider allegedly ignored his reported symptoms.

Hancock filed this *Bivens* action in April of 2020 and submitted the Amended Complaint in May 2021.  He sues several USP Lee health care providers and two doctors from the Mid-Atlantic Regional Office of the Federal Bureau of Prisons ("BOP"), seeking monetary damages for inadequate or delayed medical care for his abdominal pain and seizures.[1]  The defendants have filed a Motion to Dismiss, or in the Alternative, for Motion for Summary Judgment, ECF No. 93.  Among other

---

[1]  Hancock has notified the court that he has been transferred to USP Thomson in Illinois, where he is currently confined.

defenses, they argue that Hancock failed to exhaust administrative remedies before filing suit.  Hancock has responded to their motion, making it ripe for consideration.

## II.    DISCUSSION.

### A.    Standard of Review.

The Federal Rules of Civil Procedure provide that "[i]f, on a motion [to dismiss] under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  In addressing the defendants' exhaustion defense, I must rely on evidence they submit outside the pleadings, namely, the declaration of Ms. Spearen, a paralegal.  Mem. Supp. Mot. Ex. 1, Spearen Decl. ECF No. 94-1.  Accordingly, I will address the defendants' motion as one for summary judgment under Rule 56, rather than as a motion under Rule 12(b)(6). [2]

---

[2] The defendants have also filed a Reply, ECF No. 105, to Hancock's opposition brief.  Although titled as a Reply, this filing is more properly titled as a Supplemental Motion for Summary Judgment, since it presents additional declarations and other documentation in support of the defendants' argument that Hancock failed to satisfy the exhaustion requirement in § 1997e(a).  It is well established that summary judgment is inappropriate where a pro se plaintiff has not been advised of his right to file counteraffidavits or warned that failure to do so might result in entry of summary judgment against him. *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).  The court notified Hancock of the defendants' initial dispositive motion, ECF No. 93, and warned him of possible judgment against him if he failed to respond to it; Hancock responded with a declaration under penalty of perjury.  However, neither the court nor the defendants provided Hancock with a similar notice regarding the defendants' Reply with its additional evidence.  Accordingly, I have not considered the evidence presented with the defendants'

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed. The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. A mere scintilla of evidence supporting the case is insufficient.

*Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).[3]

A pro se litigant's verified complaint or other verified submission must be considered as an affidavit and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on the litigant's personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). "[U]nsupported speculation is not sufficient to defeat a summary judgment motion," however. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992).

---

Reply in reaching my decision to grant summary judgment for the defendants on the ground of failure to exhaust administrative remedies.

[3] I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion, unless otherwise noted.

B. Failure to Exhaust Administrative Remedies.

The Prison Litigation Reform Act, among other things, provides in 42 U.S.C. § 1997e(a) that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies.  This exhaustion requirement is "mandatory," *Ross v. Blake*, 578 U.S. 632, 638 (2016), and "applies to all inmate suits about prison life."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action.  *See Woodford v. Ngo*, 548 U.S. 81, 90–94 (2006).

The Federal Bureau of Prisons has established an Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., through which an inmate may seek formal review of issues or complaints relating to confinement.  Generally, a BOP inmate must first attempt to resolve his complaint informally according to procedures established by the facility warden.  28 C.F.R. § 542.13.  Within twenty days after the circumstance about which the inmate complains, he must complete not only the initial informal step, but he must also submit a formal written complaint on the proper form — an "Administrative Remedy Request" ("BP-9") form.  28 C.F.R. § 542.14(a).  The inmate should obtain the BP-9 form from the designated staff person and return the completed BP-9 form to that same individual (usually his

correctional counselor).  28 C.F.R. § 542.14(c).  An inmate may request an extension

of the deadline to file his BP-9 if he shows a valid reason for the delay.  28 C.F.R. §

542.14(b).

Under exceptional circumstances, when the issue is sensitive or the inmate's

safety or well-being would be placed in danger if the BP-9 became known at the

institution where he is confined, the inmate may bypass submitting his BP-9 to

institutional staff.  Rather, when a BP-9 form addresses this sort of sensitive issue,

the inmate may submit it directly to the appropriate Regional Director.  28 C.F.R.

§ 542.14(d)(1).  "The inmate shall clearly mark 'Sensitive' upon the Request and

explain, in writing, the reason for not submitting the Request at the institution."  *Id.*

If the Regional Director finds that a BP-9 submitted under this procedure does not

qualify as sensitive, he will notify the inmate in writing that he should file a BP-9 at

the institution under the normal procedures.  *Id.*  To allow the inmate to do so, the

warden should grant a reasonable extension of the normal BP-9 deadline.  *Id.*

The BOP administrative remedies procedure also provides for two levels of

appeal to reviewing officials outside the prison facility where the inmate is confined.

When the warden's response to the inmate's BP-9 is unfavorable, the inmate may

appeal within twenty days to the Regional Director using a BP-10 form.  28 C.F.R.

§ 542.15.  If the Regional Director's response is unfavorable, the inmate may appeal

within thirty days to the General Counsel using a BP-11 form.  *Id*.  The inmate must

complete all of the described steps — at the prison facility where he is confined and beyond — to accomplish full exhaustion of BOP administrative remedies.

The defendants' evidence on summary judgment is that from April 24, 2018, when Hancock arrived at USP Lee, until he filed this lawsuit in April 2020, he "did not file or attempt to file any administrative remedy." Spearen Decl. ¶ 12, ECF No. 94-1. Spearen's records indicate that during this same time period, 440 other USP Lee inmates in the general population and dozens of inmates in the SHU managed to file administrative remedies.

The defendants bear the burden of proving the affirmative defense that Hancock failed to exhaust available administrative remedies regarding his claims before filing suit. *Jones v. Bock*, 549 U.S. 199, 216 (2007). They have done so. Moreover, Hancock admits in his Amended Complaint that he did not complete the administrative remedies procedure within the BOP before filing this lawsuit.

Hancock may yet escape summary judgment under § 1997e(a) if he states facts showing that the remedies under the established grievance procedure were not "available" to him. *Ross*, 578 U.S. at 643 (noting that circumstances making prison grievance procedures unavailable "will not often arise"); *Lebron v. Anders*, No. 7:20-cv-524, 2021 WL 4227770, at *4 (W.D. Va. Sept. 16, 2021) (plaintiff bears burden of proving administrative remedies were unavailable). Generally, "an administrative remedy is not considered to have been available if a prisoner, through

no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). An administrative remedy is considered unavailable when: (1) "it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44; *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality.").

Hancock contends that his counselors at USP Lee made the administrative remedies procedure unavailable to him. He states that a few months after he arrived at USP Lee, he returned two "BP-8" forms (the informal resolution step of the USP Lee administrative remedies procedures) to his assigned counselor, Mr. Willis, who refused to log them.[4] Hancock claims that when he gave Willis the second of these BP-8 forms, Willis told him "don't bring me any more of these g** d***** things." Am. Compl. 3, ECF No. 69. Hancock asserts that the counselor's "tone and fury

---

[4] Hancock states that one of these BP-8 forms accused the food service staff of serving inmates "peanut butter and other items containing hydrogenated vegetable oil (trans fat) which has been banned by the F.D.A." Am. Compl. 3, ECF No. 69.

implied 'or else.'  [Hancock also allegedly] later learned and witnessed U.S.P. Lee staff . . . planting knives in prisoners' cells who use the grievance procedure." *Id.* Hancock states that based the "direct order by Mr. Willis not to file anymore BP-8's," *id.,* Hancock did not attempt to file any remedy forms while he was in the general population, from April 2018 until October 2019.

By the time officials transferred Hancock to the SHU, he had been assigned to Counselor Collins.  No longer concerned about "Mr. Willis' direct order or retaliation by staff," Hancock "asked Ms. Collins on two separate occasions for BP-8 complaint forms while in SHU.  She never returned with the forms."[5]  *Id.* at 4. After these two attempts to obtain proper remedy forms, Hancock resorted to sending "a written complaint on notebook paper to the FBOP Central Office regarding the denial of Medical Care" about which he complains in this lawsuit. Mot. Opp'n 15, ECF No. 100.  In response, Dr. York advised Hancock to use proper forms in the future and to allow officials to address his medical issues at the facility before sending them to outside administrative officials.  *See* Mem. Supp. Mot. Ex. 1, Smith Decl. Attach. A. at 52, ECF No. 53-1.

---

[5]  Hancock states that the USP Lee staff knew him as a "filer"; he claims an officer told him "this [was] likely the reason that Ms. Collins refused to bring proper forms" to him.  Mot. Opp'n 18–19, ECF No. 100.  Hancock asserts that the defendants fail to account for "the discrimination against and dislike for [Hancock], by staff, for his tenacious tendency to question their authority through administrative remedy and civil actions."  *Id.* at 19.

Hancock also asserts that problems he had with his outgoing legal mail from USP Lee should serve as evidence that the administrative remedies procedure was unavailable to him there.  He contends that while he was in the SHU, USP Lee staff "repeatedly intercepted [his] legal mail and destroyed it," forcing him to seek an extension of time to comply with court orders.  *Id.* at 19.

Hancock thus argues several bases for his claim that the administrative remedies at USP Lee were unavailable to him.  I will address each of them in turn.

First, Hancock asserts that Willis' alleged threatening statement made administrative remedies unavailable to Hancock while he was in the general population at USP Lee.  I find no merit to this contention.

An inmate who seeks to excuse his failure to exhaust because of an official's alleged threats must state facts meeting both facets of the *Turner v. Burnside* test.  *Lebron*, 2021 WL 4227770, at *5 (citing *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008) and other cases applying *Turner*).  Specifically, the inmate must show: (1) subjectively, that "the threat actually did deter the plaintiff inmate from lodging a grievance or pursing a particular part of the process;" and (2) objectively, that "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust."  *Turner*, 541 F.3d at 1085.

Even if Counselor Willis' alleged order or threat deterred Hancock from filing administrative remedy forms, as he alleges, the counselor's statement simply does not qualify as the type of official threat that would "deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance." *Id.* When Willis told the inmate "don't bring me any more of these [expletive] things," according to Hancock, Willis did so in response to the inmate's grievance about peanut butter ingredients. *See* Am. Compl. 3, ECF No. 69. Hancock does not allege that Willis warned him not to file grievances about other, more substantive or personal matters. Nor does Hancock assert that the counselor threatened to harm Hancock in any way for requesting remedy forms or for filing completed forms on any subject. Hancock's self-serving interpretation of Willis' statement as a threat to harm Hancock, or to have a weapon planted in his cell, if he sought to pursue administrative remedies, is simply not a reasonable inference from the facts as Hancock himself alleges them. His rank speculation that Willis was threatening to harm him is not sufficient to withstand the defendants' summary judgment motion on exhaustion grounds. Put another way, allegations of such vague comments by officials cannot constitute the type of intimidation that "thwart[s]" an inmate from using an administrative process so as to make it "unavailable" in reality. *Ross*, 578 U.S. at 644. *See also Knutson v. Hamilton*, No. 7:20-cv-00455, 2021 WL 4163981, at *4–5 (W.D. Va. Sept. 13,

2021) ("a general fear of 'retaliation' does not render administrative remedies unavailable'").

Second, Hancock contends that the inaccessibility of administrative forms at in the SHU at USP Lee made the remedy procedures unavailable to him after his transfer to that unit. His evidence does not support this argument.

Hancock alleges that he transferred to the SHU in mid-October 2019 and was no longer fearful of retaliation from Willis if he asked his new counselor for remedy forms. Yet, Hancock alleges that in almost six months, from October 2019 until he filed this civil action in April 2020, he asked Collins for BP-8 forms on only two occasions. He does not state when he made these requests or indicate that he made any attempt to follow up with Collins when she did not provide him with remedy forms within a few days. Hancock states only that USP Lee staff knew him as a "filer," and he believes that "discrimination against and dislike for [him], by staff, for his tenacious tendency to question their a[u]thority through administrative remed[ies] and civil actions" likely motivated Collins to refuse him remedy forms. Mot. Opp'n 18–19, ECF No. 100. Such speculation about Collins's possible motives is insufficient to withstand summary judgment. More importantly, Hancock completely fails to show due diligence toward completion of the exhaustion process as required. Again, I simply cannot find that these allegations meet the unusual circumstance in *Ross* where prison officials' actions or comments have thwarted an

inmate's ability to utilize and exhaust administrative remedies so as to make those remedies unavailable.

Third, Hancock points to delayed, outgoing legal mail, apparently asking the court to find that similar delays (allegedly concocted by prison officials) also thwarted Hancock's exhaustion efforts. I find no factual or logical connection between Hancock's alleged legal mail difficulties and his claimed inability to obtain remedy forms and complete the exhaustion process. Rather, his factual allegations point again to his own lack of due diligence.

Fourth, Hancock contends that his notebook paper complaint about his medical care, mailed directly to outside BOP administrators in contradiction of the BOP remedy procedures directing him to file remedy forms first at the prison, proves that officers at USP Lee thwarted his efforts to obtain proper forms.[6] I find no merit to this argument. This homemade remedy form and filing procedure do not prove that proper forms were unavailable to Hancock at USP Lee. Rather, they show Hancock's attempt to circumvent established administrative remedy procedures by inventing his own forms and procedures. Such manufactured grievance measures

---

[6] In raising this argument, Hancock cites to his earlier lawsuit related to events at a BOP facility in the Southern District of West Virginia; however, the unexhausted claim in that case arose under the Federal Tort Claims Act, not *Bivens*, and the ultimate outcome of the case does not support Hancock's arguments here. *Hancock v. Rickard*, No. 1:18-00024, 2019 WL 9047228, at *20 (S.D.W. Va. Oct. 25, 2019), *R. & R. adopted in part and rejected in part*, No. 1:18-00024, 2020 WL 1502859, at *7–8 (S.D.W. Va. Mar. 30, 2020).

do not comport with the exhaustion requirements under federal law. 42 U.S.C. § 1997e(a); *Woodford*, 548 U.S. at 90–94 (to comply with § 1997e(a), inmate must follow all steps of established grievance procedure before filing his civil rights action).

Finally, it is undisputed that Hancock never filed a sensitive administrative remedy form directly to the appropriate Regional Director. This remedy exists to allow an inmate to submit a remedy request without staff members at the prison facility being able to see the filing. 28 C.F.R. § 542.14(d)(1). If Hancock believed that Willis or Collins was attempting to block him from completing the administrative remedies procedure, he could have used this mechanism to complete the first step of the established remedy process so that he could then move on to the appeals built into the procedures. Yet, Hancock failed to do so. *See Knutson v. Hamilton,* No. 7:20-cv-00455, 2021 WL 388444, at *6 (W.D. Va. Feb. 3, 2021) (finding that the inmate's failure to file sensitive request was further evidence that administrative remedies were not unavailable).

### III.   CONCLUSION.

For the stated reasons, I conclude that Hancock did not properly exhaust his administrative remedies before filing this action about his medical care at USP Lee. I also conclude that he has failed to present any disputed fact on which he could persuade a fact finder that those remedies were unavailable to him. Furthermore, I

find it clear from the record that Hancock no longer has an available administrative remedy regarding the defendants' medical treatment decisions from April 2018 to April 2020, the time period at issue in this lawsuit.  Accordingly, I will grant the defendants' Motion for Summary Judgment on the ground that Hancock failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a) and will dismiss with prejudice Hancock's claims under *Bivens*.

A separate Order will be entered herewith.

DATED:   March 8, 2022

/s/  JAMES P. JONES
Senior United States District Judge